# 14-3533-cv

# United States Court of Appeals
## for the
## Second Circuit

♦━━━●▌●━━━♦

TRUMAN CAPITAL ADVISORS LP, US BANK, N.A., solely as Legal Title Trustee for the Truman 2012 SC2 Title Trust, and as Participation Agent for the Truman 2012 SC2 Title Trust, TRUMAN 2012 SC2 TITLE TRUST,

*Plaintiffs-Appellants,*

– v. –

NATIONSTAR MORTGAGE, LLC,

*Defendant-Appellee.*

───────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

PILIERO & ASSOCIATES, PLLC
*Attorneys for Plaintiffs-Appellants*
444 Madison Avenue, 4th Floor
New York, New York 10022
(646) 854-1273

## CORPORATE DISCLOSURE STATEMENT PURSUANT TO FRAP 26.1 (a)

No corporate party with a financial interest in this appeal has a parent corporation or has more than 10% or more of its stock owned by a publicly held corporation.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES RAISED ON THIS APPEAL ......................................................1

STATEMENT OF THE CASE.................................................................2

SUMMARY OF THE ARGUMENT .......................................................5

ARGUMENT ........................................................................................8

  POINT I:   Truman Capital Had a Contractual Right

              To Purchase the Notes From Nationstar...............................................8

   A.  Standard of Appellate Review......................................................8

   B.  Standard on Motion to Dismiss For Failure to State a Claim. .....................9

   C.  Applicable Law. .........................................................................10

   D.  Relevant Principles of Contract Interpretation...........................................10

   E.  Relevant Provisions of the Contract............................................15

  Point II:  Nationstar Should Be Estopped From Denying That

            It Promised To Sell   The Notes To Truman Capital ...........................35

CONCLUSION .....................................................................................39

i

# TABLE OF AUTHORITIES

**Cases**

*196 Owners Corp. v. Hampton Management Co.*,
227 A.D.2d 296, 642 N.Y.S.2d 316 (1st Dep't 1996)...........................................13

*Adjustrite Systems Inc. v. GAB Business Services, Inc.*,
145 F.3d 543 (2d Cir. 1998) ...................................................................... 34

*Agor v. Board of Educ.*,
115 A.D.3d 1047.................................................................................... 15

*American Express Bank Ltd. V. Uniroyal, Inc.*,
164 A.D.2d 275, 562 N.Y.S.2d 613 (1st Dep't 1990)...........................................11

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
884 F.2d 69 (2d Cir. 1989) .....................................................................34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................ 9

*Badie v. Bank of Am.*,
67 Cal.App.4th 779, 79 Cal.Rptr.2d 273 (1998) ...................................................12

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993)....................................12

*Bedrosian v. Tenet Healthcare Corp.*,
208 F.3d 220 (9th Cir. 2000) ...............................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................9

*Bleecher v. Conte*,
29 Cal.3d 345, 213 Cal.Rptr. 852 ................................................... 28, 29

ii

*Bustamante v. Intuit, Inc.*,
   141 Cal.App.4th 199, 452 Cal. Rptr. 3d 692 (Ct. App. 2006)........................ 14,17

*Calhoun v. Huntingon Park First Sav.ings and Loan Ass'ociation*,
   186 Cal. App. 2d 451, 9 Cal. Rptr. 479 (Cal. Ct. App. 1960) .............................37

*Cano v. Tyrrell*,
   256 Cal.App.2d 824, 64 Cal.Rptr. 522 (Ct. App. 1967).......................................19

*Chatterjee Jund Management, L.P. v. Dimensional Media Associates*,
   260 A.D.2d 159, 687 N.Y.S.2d 364 (1st Dep't 1999)..........................................13

*City of Industry v. City of Fillmore*,
   198 Cal. App. 4th 191, 129 Cal.Rptr.3d 433 (Ct. App. 2011).............................19

*Consul Ltd. v. Solide Enterprises, Inc.*,
   802 F.2d 1143 (9th Cir. 1986) ...................................................................... 12,14

*Cooper v. State Farm Mut.ual Auto.mobile Ins.urance Co.*,
   mpany, 177 Cal. App. 4th 876, 99 Cal. Rptr. 3d 870 (Cal. Ct. App. 2009) .........38

*Coughlin v. Blair*,
   41 Cal. 2d 587, 262 P.2d 305 (1953) ..................................................................38

*Diede Const.ruction, Inc. v. Monterey Mechanical Co.*,
   125 Cal. App. 4th 380, 22 Cal. Rptr. 3d 763 (Cal. Ct. App. 2004).....................37

*Duane Reade, Inc. v. Cardtronics, LP*,
   54 A.D.3d 137, 863 N.Y.S.2d 14 (1st Dep't 2008)...............................................11

*Equitable Life Assurance Society v. Berry*,
   212 Cal. App.3d 832, 260 Cal. Rptr. 819 (Ct. App. 1989)...................................13

*FCOF UB Securities LLC v. MorEquity, Inc.*,
   663 F. Supp. 2d 224 (S.D.N.Y. 2009) .................................................................34

*Garcia v. American General Life Ins. Co. of New York*,
    264 A.D.2d 808, 695 N.Y.S.2d 420 (2d Dep't 1999) ..........................................13

*Garton v. Title Insurance & Trust Company*,
    106 Cal.App.3d 365, 165 Cal.Rptr. 449 (Ct. App. 1980)........................ 19, 20, 22

*Greene v. Wilson*,
    208 Cal. App. 2d 852, 25 Cal. Rptr. 630 (Cal. Ct. App. 1962) ...........................37

*Guardian Life Ins. Co. of America, Inc. v. Schaefer*,
    70 N.Y.2d 888, 519 N.E.2d 288, 524 N.Y.S.2d 377 (1987) ...............................13

*Hartley v. Superior Court*,
    196 Cal.App.4th 1249, 127 Cal.Rptr.3d 174 (Ct. App. 2011).............................13

*Hauser v. W. Grp. Nurseries, Inc.*,
    767 F. Supp. 475 (S.D.N.Y. 1991) .....................................................................11

*Heller v. Consol. Rail Corp.*,
    331 F. App'x 766 (2d Cir. 2009)...........................................................................9

*Hudson v. Allstate Ins. Co.*,
    25 A.D.3d 654, 809 N.Y.S.2d 124 (2d Dep't 2006) ...........................................11

*Hunt v. Superior Court*,
    81 Cal.App.4th 901, 97 Cal. Rptr. 2d 215 (Ct. App. 2000)................................13

*In re El Camino Press*,
    31 B.R. 340, (Bankr. C.D. Cal. 1983) ......................................................... 23, 26

*In re South Side House, LLC*,
    470 B.R. 659 (Bankr. E.D.N.Y. 2012) ...............................................................11

*Jack Rowe Associates, Inc. v. Sanyo Fisher (USA) Corp.*,
    936 F.2d 578 (9th Cir. 1991) ..............................................................................38

*Keiler v. Harlequin Enterprises Ltd.*,
    751 F.3d 64 (2d Cir. 2014) ...................................................................................9

iv

*Khajavi v. Feather River Anesthesia Medical Group*,
   84 Cal.App.4th 32, 100 Cal.Rptr.2d 627 (Ct. App. 2000)....................................34

*Kiseskey v. Carpenters' Trust for Southern California*,
   144 Cal. App. 3d 222, 192 Cal.Rptr. 492 (Ct. App. 1983)..................................19

*Litwin v. Blackstone Grp., L.P.*,
   634 F.3d 706 (2d Cir. 2011) ..................................................................................9

*Louis Lesser Enterprises, Limited v. Roeder*,
   209 Cal.App.2d 401, 25 Cal.Rptr. 917 (Ct. App. 1962)....................................34

*Madison v. Superior Court*,
   203 Cal.App.3d 589, 250 Cal. Rptr. 299 (Ct. App. 1988)..................................13

*Maples v. SolarWinds, Inc.,* C 12-6066 SBA, 2014 WL 2860848 (N.D. Cal. June
   23, 2014) ....................................................................................................... 12, 33

*Maniolos v. U.S.*,
   741 F.Supp.2d 555 (S.D.N.Y. 2010) ...................................................................15

*Monaco v. Bear Stearns Residential Mortg. Corp.*,
   554 F.Supp.2d 1034 (C.D.Cal. 2008) ..................................................................14

*N.L.R.B. v. Local 32B-32J Service Employees Intern. Union*,
   353 F.3d 197 (2d Cir. 2003) ................................................................................28

*Natural Resources Defense Council, Inc. v. County of Los Angeles*,
   725 F.3d 1194 (9th Cir. 2013) .............................................................................28

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
   709 F.3d 109 (2d Cir. 2013) ..................................................................................9

*Oceanside 84, Ltd. v. Fidelity Federal Bank*,
   56 Cal.App.4th 1441, 66 Cal.Rptr.2d 487 (Ct. App. 1997)........................... 12, 13

*Plaza Home Mortgage, Inc. v. North American Title Insurance Company, Inc.*,
   2013 WL 1694916 (Cal. Ct. App. April 19, 2013)................................................38

*Powers v. Dickson, Carlson & Campillo*,
   54 Cal.App.4th 1102, 63 Cal.Rptr.2d 261 (Ct. App. 1997)..................................13

*Prouty v. Gores Technology Group*,
   121 Cal. App. 4th 1225, 18 Cal.Rptr.3d 178 (Calt. App. 2004).........................32

*Recorded Picture Co. v. Nelson Entertainment, Inc.*,
   53 Cal.App.4th 350, 61 Cal.Rptr.2d 742 (Ct. App. 1997)...................................29

*Rex v. Chase Home Fin. LLC*,
   905 F. Supp. 2d 1111 (C.D. Cal. 2012) ...............................................................13

*Reyes v. Downey Savings and Loan Ass'n, F.A.*,
   541 F.Supp.2d 1108 (C.D.Cal. 2008) ...................................................................14

*Robinson v. Bank of Am.*, 12–CV–00494–RMW, 2012 WL 1932842 (N.D. Cal.
   May 29, 2012)........................................................................................................12

*Sanbrook v. Office Depot, Inc.*,
   2009 WL 400198 (Cal. Ct. App.N.D. Cal. February 18, 2009) ...........................38

*Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*,
   7 F.3d 1091 (2d Cir. 1993) ...................................................................................12

*Scripps Health v. Blue Cross & Blue Shield of Kansas, Inc.*,
   2011 WL 292142 (S.D. Cal. 2011).......................................................................29

*Seabury Const. Corp. v. Jeffrey Chain Corp.*,
   289 F.3d 63 (2d Cir. 2002) ...................................................................................11

*Sedco, Inc. v. S.S. Strathewe*,
   800 F.2d 27 (2d Cir. 1986) ...................................................................................17

*Seiden Associates, Inc. v. ANC Holdings, Inc.*,
  959 F.2d 425 (2d Cir. 1992) ................................................................12

*Serdavic v. Centex Homes, LLC*,
  760 F.Supp.2d 322 (S.D.N.Y. 2010) ...................................................15

*Sorlucco v. New York City Police Dept.*,
  971 F.2d 864 (2d Cir. 1992) ................................................................17

*Southern Cal. Edison Co. v. Superior Court*,
  37 Cal.App.4th 839, 44 Cal.Rptr.2d 227 (Ct. App. 1995)....................12

*Stocco v. Gemological Inst. of Am., Inc.*,
  975 F. Supp. 2d 1170 (S.D. Cal. 2013)................................................13

*Teachers Ins. and Annuity Ass'n of America v. Tribune Co.*,
  670 F. Supp. 491 (S.D.N.Y. 1987) ......................................................34

*Telerep, LLC v. U.S. Intern. Media, LLC*,
  74 A.D.3d 401, 903 N.Y.S.2d 14 (1st Dep't 2010)...............................12

*The Aspect Group v. Movietickets.com, Inc.*,
  2006 WL 5894608 (C.D. Cal. 2006) ....................................................34

*TRB Invs., Inc. v. Fireman's Fund Ins. Co.*,
  40 Cal. 4th 19, 50 Cal. Rptr. 3d 597, 145 P.3d 472 (2006)..................11

*Trump-Equitable Fifth Ave. Co. v. H.R.H. Const. Corp.*,
  106 A.D.2d 242, 485 N.Y.S.2d 65 (1st Dep't 1985)..............................11

*U.S. Ecology, Inc. v. State*,
  129 Cal. App. 4th 887, 28 Cal. Rptr. 3d 894 (Cal. Ct. App. 2005)......35

*Uribe v. Merchants Bank of New York*,
  91 N.Y.2d 336, 693 N.E.2d 740, 670 N.Y.S.2d 393 (1998) ................13

vii

*US Oncology, Inc. v. Wilmington Trust FSB*,
   102 A.D.3d 401, 958 N.Y.S.2d 47 (1st Dep't 2013)............................................12

*Velazquez v. GMAC Mortg. Corp.*,
   605 F.Supp.2d 1049 (C.D.Cal.2008) ....................................................14

*Venizelos S.A. v. Chase Manhattan Bank*,
   425 F.2d 461 (2d Cir. 1970) ..................................................28

*Walsh v. Schlecht*,
   429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977)............................................28

*Westlands Water Dist. v. U.S. Dep.t of Interior, Bureau of Reclamation*,
   850 F. Supp. 1388 (E.D. Cal.1994) ....................................................14

*Winegar v. Gray*,
   204 Cal. App. 2d 303, 22 Cal. Rptr. 301 (Cal. Ct. App. 2003) ............................38

*Zalkind v. Ceradyne, Inc.*,
   194 Cal.App.4th 1010, 124 Cal.Rptr.3d 105 (2011) ............................................11

**Statutes**

28 U.S.C. § 1291 ....................................................1

28 U.S.C. § 1332 (a)(1)....................................................1

Cal. Civ. Code § 1589 .................................................... 29, 30

Cal. Civ. Code § 1641 ....................................................10

Cal. Civ. Code § 1652 ....................................................11

Cal. Civ. Code § 1654 ....................................................12

**Rules**

F.R.A.P. 32(a) ....................................................40

Fed. R. Civ. P. 12(b) (6)..........................................................................8

Fed. R. Civ. P. Rule 8(a) (2) .................................................................9

FRAP 26.1 (a) ........................................................................................1

Rule 12(b)(6)..........................................................................................9

## Other Authorities

Restatement (Second) of Contracts § 27 (1981)......................................34

## JURISDICTIONAL STATEMENT

**A.    District Court Jurisdiction.**   Subject matter jurisdiction existed in the District Court pursuant to 28 U.S.C. § 1332 (a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

**B.    Jurisdiction of this Court.**  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

**C.    Timeliness of the Appeal.**   The Judgment from which this appeal is taken was entered on August 25, 2014.  The Notice of Appeal was timely filed on September 22, 2014.

**D.    Final Order and Judgment.**   This appeal is taken from a final judgment entered pursuant to a Memorandum and Order issued on August 25, 2014 by Hon. Naomi Reice Buchwald disposing of the claims of all parties.

## ISSUES RAISED ON THIS APPEAL

1.    Whether the District Court erred in interpreting the contract at issue by giving effect only to the provisions "that are most declarative, easiest to understand, the ones in English," rather than by applying well-established principles of contract construction requiring that all provisions of a contract be given legal effect, with no provisions deemed to be mere surplusage; that the terms of a contract should be construed against the drafter; and that resolution of

ambiguities in contract language should be deemed the province of the jury, and therefore inappropriate for disposition on a motion to dismiss.

2.      Whether the District Court's rulings regarding the interpretation of the contract erroneously impacted its view of the alternative claim for promissory estoppel.

## STATEMENT OF THE CASE

Plaintiff-Appellant Truman Capital Advisors LP ("Truman Capital") acts as an investment manager for institutional investors.  (Cmplt, ¶ 8; JA 18).[1] Defendant-Appellee Nationstar Mortgage, LLC ("Nationstar") is a mortgage servicing company that operates nationwide, claiming during the relevant time period to service mortgages with an aggregate unpaid balance of more than $100 billion.  (Cmplt, ¶ 9; JA 18).  The dispute that forms the subject matter of this action and this appeal involves the sale of a large volume of non-performing residential real estate mortgage notes ("Notes") offered by Nationstar through an online auction conducted by its exclusive agent, Auction.com.  (Cmplt, ¶ 1, Exhibit 1 ("Auction Terms"), page 1, para. 1 and section 1, and page 2, section 3, para. 1, last sentence; JA 28, 29, 30).  A large number of bidders, including Truman Capital, conducted extensive due diligence with respect to the value of the

---

[1]   References to "JA __" are to pages of the Joint Appendix.  The other Plaintiff-Appellants identified in the caption in this action appear solely in a representative capacity.

residential properties securing the Notes, and participated in several days of on-line bidding.  (Cmplt, ¶ 20; JA 20).  At the conclusion of the auction process, Nationstar's agent provided Truman Capital with both oral and written notification that it was the "Winning Bidder" as to 538 Notes.  (Cmplt, ¶¶ 29, 41 (as to 304 Notes and 234 Notes, respectively); JA 22, 23).

The auction was conducted pursuant to the terms of a document entitled "Reserve Auction Terms and Conditions — Pool Notes" (referred to herein in as the "Auction Terms") (Cmplt, Ex. 1; JA 28 – 33), which were prepared by Nationstar and its auctioneer-agent without any opportunity for negotiation or discussion by Truman Capital.  In a "Reserve Auction," the Seller sets a minimum sale or "reserve" price in advance of the auction.  (Cmplt, ¶ 14; JA 19).  If the final bid does not meet or exceed the reserve price, then the item remains unsold.  *Id.*  In all auctions, "Reserve Auctions" or otherwise, the sale is complete when the auctioneer announces the winning bidder unless the seller had clearly specified any conditions to the sale as to which the bidders had been apprised and which the winning bidder failed to satisfy.  (Cmplt, ¶ 15; JA 19).  After that announcement, the Seller may not withdraw the item and is legally bound to complete the sale to the winning bidder.  *Id.*

After registering online with Auction.com, Truman Capital conducted extensive due diligence in the "data vault" made available by Nationstar and then

conducted an independent analysis and evaluation of the real property securing

hundreds of nonperforming Mortgage Notes. (Cmplt, ¶¶ 20, 25, 28; JA 20, 21).

Upon completion of that extensive analysis, Truman Capital (and presumably the

other bidders as well) devoted extensive time to the preparation of bids that they

believed would meet or exceed the "Reserve Prices" that Nationstar had set for

each of the Notes. (Cmplt, ¶ 28; JA21). At the conclusion of that process,

Nationstar's exclusive agent, the auctioneer Auction.com, advised Truman Capital,

both orally and in writing that it was the Winning Bidder with respect to 538 Notes

(Cmplt, ¶¶ 29, 41 (as to 304 Notes and 234 Notes, respectively); JA22, 23). When

Truman Capital attempted to consummate the sale of those Notes, however,

Nationstar refused to do so. (Cmplt, ¶¶ 49, 51-55; JA 10). There is nothing in the

record to justify, or even attempt to explain, Nationstar's refusal.[2] The Complaint

alleges that Nationstar's decision in that regard was based principally, if not solely,

on "seller's remorse," as the Complaint alleges that the difference between the

Reserve Prices Nationstar had set for and at which it agreed to sell the Mortgage

_____

[2] For a brief time, a Temporary Restraining Order that was issued in a separate New York State Supreme Court action (in which Truman Capital was not a party and about which it was unaware) prevented Nationstar from selling some of the Notes it had put up for auction, including a relatively small number as to which Truman Capital had been declared the Winning Bidder. The TRO was dissolved soon after it was issued, but Nationstar still refused to honor its obligation to sell the Notes to Truman Capital (Cmplt, ¶¶ 43-50; JA 24-25).

Loans to Truman Capital was approximately $35 million lower than their fair market value. (Cmplt, ¶¶ 2, 55; JA 17, 26).

## SUMMARY OF THE ARGUMENT

The parties agree that the Auction Terms constitute a contract that is binding on both parties. (Auction Terms, section 7 ("Disclaimer"), page 6, last para.; JA 33). They disagree, however, as to the proper interpretation of that contract.

The contract at issue in this case and on this appeal is the agreement created by the Auction Terms for the purpose of determining which of the bidders would have the right to purchase the Notes that had been put up for auction. The Auction Terms contemplated that, after the Auctioneer designated those successful bidders with the <u>right</u> to purchase the Notes, those bidders would subsequently enter into separate contracts directly with Nationstar to actually effect the purchase and sale of the Notes. Nationstar and the District Court appear to have conflated the distinction between those two contracts. The claims asserted in this action and on this appeal arise out of Nationstar's breach of the <u>first</u> contract by refusing to enter into the contemplated <u>subsequent</u> separate sales contract.[3]

_____

[3] Although that contemplated subsequent purchase and sale agreement was not consummated, the District Court specifically found that all the "essential terms of an agreement" had been established. (Opinion, at 14; JA 85).

Truman Capital's contractual right to purchase, and Nationstar's contractual obligation to sell, the Notes is based on a number of provisions in the Auction Terms that are discussed in greater detail in the Argument section below. But perhaps the clearest statement of that right and that obligation appears in the section of the Auction Terms that is entitled "Bidding and Winning." That provision states:

> To purchase a particular Note at the Auction, one must be acknowledged by the <u>Auctioneer</u> as the Winning Bidder (the bidder to whom the <u>Auctioneer</u> acknowledges the Note as being "SOLD" to), and such Note is not identified as being sold "Subject to Confirmation" (see below).

(Auction Terms, page 2, section 3, para. 3 ("Bidding and Winning"), second sentence; JA 29) (emphasis added). It is undisputed that both prerequisites were satisfied in this case: the Auctioneer <u>did</u> advise Truman Capital, both orally and in writing, that it was the "Winning Bidder"; and the Auctioneer <u>did not</u> advise Truman Capital that the Notes were being sold "Subject to Confirmation."

Despite this clear language confirming that Nationstar had authorized the <u>Auctioneer</u> to acknowledge the Notes as being "SOLD" to the bidders that the <u>Auctioneer</u> identified as the "Winning Bidders," Nationstar claims (and the District Court agreed) that the Auctioneer actually had no such authority. This is so, they say, because a different portion of the Auction Terms, entitled "General Auction Information," states that "[n]o obligation to sell shall be binding on Seller

- 6 -

[Nationstar] unless and until a written contract of sale or loan sale agreement is signed and delivered <u>by Seller</u>" (emphasis added).  (Auction Terms, page 5, section 6 ("General Auction Information"), para. 3, fourth and fifth sentences; JA 32).

In reaching its decision to dismiss the Complaint for failure to state a claim, the District Court articulated its *ratio decidendi* for dealing with the inconsistency between these and several other provisions of the Auction Terms that are discussed below.

> The question is, I think, or a way to kind of think through this, is which of the provisions in the auction terms are the ones that are clearest in sort of like one syllable.  Which are what one might call the black letter provisions, the ones that are most declarative, easiest to understand, the ones in English, the ones that don't require intelligent lawyers interpreting them.

(Transcript of Oral Argument, at 12:3-9; JA 55).

The principal legal issue on appeal is whether the District Court's novel approach to contract interpretation should be accepted by the Second Circuit as an accurate statement of  applicable law, or whether District Courts in this Circuit should, in future cases, continue to apply traditional rules of contract interpretation, such as, for example,

- the requirement that all the provisions of a contract should be given effect, with no provisions deemed to be mere surplusage;

- 7 -

- the admonition that if the District Court cannot harmonize and give effect to all the provisions of a contract, it must rule, as a matter of law, that the contract is ambiguous;

- the rule of *contra proferentem*, that when contract terms are drafted by one party, as they were in this case, they should be construed in the light most favorable to the other party; and

- the recognition that it lies within the sole province of the trier of fact to resolve  ambiguities and, accordingly, that District Courts are required to deny a motion to dismiss that is based on a proffered interpretation of an ambiguous contract.

Application of these time-honored principles would, we respectfully submit, have resulted in a denial of Nationstar's motion to dismiss the Complaint.

Alternatively, even if the Court were to conclude that no enforceable contract was created pursuant to the Auction Terms or as a matter of common law, Truman Capital's alternate claim of a right to purchase the Notes based on a theory of promissory estoppel should not have been dismissed.

## ARGUMENT

**POINT I:   Truman Capital Had a Contractual Right
                 To Purchase the Notes From Nationstar**

**A.      Standard of Appellate Review.**   A District Court's dismissal of a Complaint pursuant to Fed. R. Civ. P. 12(b) (6) is subject to *de novo* review by this

Court.  *See, e.g., Keiler v. Harlequin Enterprises Ltd.,* 751 F.3d 64, 68 (2d Cir. 2014) ("We review *de novo* the dismissal of a complaint under Rule 12(b)(6), accepting all factual allegations (but not legal conclusions) as true and drawing all reasonable inferences in favor of the plaintiffs."); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,* 709 F.3d 109, 119 (2d Cir. 2013) (same); *Litwin v. Blackstone Grp., L.P.,* 634 F.3d 706, 715 (2d Cir. 2011) (same); *Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 767 (2d Cir. 2009) (same).

### B.    Standard on Motion to Dismiss For Failure to State a Claim.

Fed. R. Civ. P. Rule 8(a) (2) has long required only a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to withstand a motion to dismiss.  Although the Supreme Court has engrafted a "plausibility" requirement onto that simple "notice-pleading" standard within the past decade, there is nothing in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), or any of the authorities they spawned that alters the fundamental rules that control the decision in this case: all factual allegations contained in a Complaint must be taken as true, and all inferences must be drawn in favor of the pleader.  *Keiler v. Harlequin Enterprises Ltd., supra*, at 68.  As discussed below, it would hardly be "implausible" for any auction bidder to claim a right to purchase property as to which the Auctioneer had unconditionally declared it to be the Winning Bidder.  What is indeed implausible, however, is the

notion that the Auctioneer lacked authority to communicate that determination to Truman Capital in this case, where the controlling language of the Auction Terms that were prepared by Nationstar with no negotiation or input from Truman Capital specifically authorized its agent, the Auctioneer, to do so. (Auction Terms, page 2, section 3, para. 3 ("Bidding and Winning"), second sentence; JA 29).

**C. Applicable Law.** The contract provides, and the parties agree, that "[t]he respective rights and obligations of the parties with respect to these Auction Terms and Conditions and the conduct of the Auction shall be governed by, interpreted and enforced under the laws of the State of California (Auction Terms, page 5, section 6 ("General Auction Information"), para. 2, first sentence; JA 32).

**D. Relevant Principles of Contract Interpretation.** There is no substantive difference in the rules applicable under California and New York law. However, the task of discerning these rules is a bit more straightforward under California law, as many of those rules are embodied in provisions of the California Civil Code. Following is a brief summary of the principles of contract interpretation that are most relevant under California law, with brief references to their New York law analogues.

- "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641; *see also Zalkind v. Ceradyne, Inc.,* 194 Cal.App.4th

1010, 1027, 124 Cal.Rptr.3d 105 (2011) ("[T]he meaning of a contract must be derived from reading the whole of the contract, with individual provisions interpreted together, <u>in order to give effect to all provisions and to avoid rendering some meaningless.</u>") (emphasis added).[4]

- "Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give <u>some effect</u> to the repugnant clauses, subordinate to the general intent and purpose of the whole contract."  Cal. Civ. Code § 1652 (emphasis added). [5]

- If a contract is "capable of two or more constructions, both of which are reasonable," it is considered ambiguous.  *TRB Invs., Inc. v. Fireman's Fund Ins. Co.,* 40 Cal. 4th 19, 27, 50 Cal.Rptr.3d 597, 603, 145 P.3d 472, 477

---

[4]  New York law is no different.  *See, e.g., Duane Reade, Inc. v. Cardtronics, LP,* 54 A.D.3d 137, 143-44, 863 N.Y.S.2d 14, 19 (1st Dep't 2008); *American Express Bank Ltd. V. Uniroyal, Inc.,* 164 A.D.2d 275, 277, 562 N.Y.S.2d 613, 614 (1st Dep't 1990) ("A contract should be construed so as to give full meaning and effect to all of its provisions."); *Trump-Equitable Fifth Ave. Co. v. H.R.H. Const. Corp.,* 106 A.D.2d 242, 244, 485 N.Y.S.2d 65, 67 (1st Dep't 1985).

[5]  New York law is no different.  *See, e.g., <u>Seabury Const. Corp. v. Jeffrey Chain Corp.</u>,* 289 F.3d 63, 69 (2d Cir. 2002) ("where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect."); *In re South Side House, LLC,* 470 B.R. 659, 672 (Bankr. E.D.N.Y. 2012) (same); *Hauser v. W. Grp. Nurseries, Inc.,* 767 F. Supp. 475, 488 (S.D.N.Y. 1991) (same); *Hudson v. Allstate Ins. Co.,* 25 A.D.3d 654, 656, 809 N.Y.S.2d 124, 126 (2d Dep't 2006).

- 11 -

(2006); *Robinson v. Bank of Am.,* 12–CV–00494–RMW, 2012 WL 1932842 (N.D. Cal. May 29, 2012); *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.,* 5 Cal.4th 854, 867, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993); *Oceanside 84, Ltd. v. Fidelity Federal Bank,* 56 Cal.App.4th 1441, 1448, 66 Cal.Rptr.2d 487 (Ct. App. 1997) ("If the contract is capable of more than one reasonable interpretation, it is ambiguous."); *Southern Cal. Edison Co. v. Superior Court*, 37 Cal.App.4th 839, 848, 44 Cal.Rptr.2d 227 (Ct. App. 1995) (same).[6]

- "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654; *see also Consul Ltd. v. Solide Enterprises, Inc.,* 802 F.2d 1143, 1149 (9th Cir. 1986)*; Maples v. SolarWinds, Inc.,* C 12-6066 SBA, 2014 WL 2860848 (N.D. Cal. June 23, 2014) ("'When ambiguities ... cannot be dispelled by application of the other rules of contract interpretation, they are resolved against the drafter'" (quoting *Badie v. Bank of Am.*, 67 Cal.App.4th 779, 798-799, 79 Cal.Rptr.2d

---

[6] New York law is no different. *See, e.g., Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993); *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992); *US Oncology, Inc. v. Wilmington Trust FSB*, 102 A.D.3d 401, 402, 958 N.Y.S.2d 47, 49 (1st Dep't 2013); *Telerep, LLC v. U.S. Intern. Media, LLC*, 74 A.D.3d 401, 402, 903 N.Y.S.2d 14, 15 (1st Dep't 2010).

273 (1998)); *Stocco v. Gemological Inst. of Am., Inc.,* 975 F. Supp. 2d 1170, 1179 (S.D. Cal. 2013*); Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1154 (C.D. Cal. 2012); *Hartley v. Superior Court,* 196 Cal.App.4th 1249, 1258, 127 Cal.Rptr.3d 174, 181 (Ct. App. 2011) ("We construe ambiguities against ... the drafting party"); *Hunt v. Superior Court*, 81 Cal.App.4th 901, 909, 97 Cal.Rptr.2d 215, 220 (Ct. App. 2000); *Oceanside 84, Ltd*., *supra*, at p. 1448; *Powers v. Dickson, Carlson & Campillo,* 54 Cal.App.4th 1102, 1112, 63 Cal.Rptr.2d 261 (Ct. App. 1997).[7]

- The trial court's ruling on the threshold determination of "ambiguity" is a question of law, not of fact, *Madison v. Superior Court*, 203 Cal.App.3d 589, 598, 250 Cal.Rptr. 299 (Ct. App. 1988), and is therefore subject to independent *de novo* appellate review.  *Equitable Life Assurance Society v. Berry,* 212 Cal.App.3d 832, 840, 260 Cal.Rptr. 819 (Ct. App. 1989).

The District Court based its dismissal of the Complaint in this case on its conclusion, as a matter of law, that despite the existence of provisions that seem

---

[7]  New York law is no different.  *See, e.g.*, *Uribe v. Merchants Bank of New York*, 91 N.Y.2d 336, 341, 693 N.E.2d 740, 670 N.Y.S.2d 393 (1998); *Guardian Life Ins. Co. of America, Inc. v. Schaefer*, 70 N.Y.2d 888, 890, 519 N.E.2d 288, 524 N.Y.S.2d 377 (1987); *Chatterjee Jund Management, L.P. v. Dimensional Media Associates*, 260 A.D.2d 159, 687 N.Y.S.2d 364 (1st Dep't 1999): *196 Owners Corp. v. Hampton Management Co.*, 227 A.D.2d 296, 642 N.Y.S.2d 316, 317 (1st Dep't 1996); *Garcia v. American General Life Ins. Co. of New York*, 264 A.D.2d 808, 809, 695 N.Y.S.2d 420 (2d Dep't 1999).

difficult to harmonize, the Auction Terms are not ambiguous (Opinion, at 17-18; JA 88-89). But if this Court determines, after its *de novo* review, that such ambiguity does exist, that determination necessarily requires reversal of the District Court's Order dismissing the Complaint. "A motion to dismiss cannot be granted against a complaint to enforce an ambiguous contract." *Westlands Water Dist. v. U.S. Dep.t of Interior*, *Bureau of Reclamation,* 850 F. Supp. 1388, 1408 (E.D. Cal.1994*); see also Bedrosian v. Tenet Healthcare Corp*., 208 F.3d 220, *1 (9th Cir. 2000) ("Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous"); *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1149 (9th Cir.1986) (9th Circuit concluded that the District Court erred in granting a motion to dismiss breach of contract claims because terms of contract were ambiguous.); *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F.Supp.2d 1034, 1040 (C.D.Cal. 2008); *Reyes v. Downey Savings and Loan Ass'n, F.A.*, 541 F.Supp.2d 1108, 1116 (C.D.Cal. 2008); *Velazquez v. GMAC Mortg. Corp.*, 605 F.Supp.2d 1049, 1069 (C.D.Cal.2008) ("[A] motion to dismiss [a claim for breach of contract] should not be granted where the contract 'leaves doubt as to the parties' intent'"); *Bustamante v. Intuit, Inc.,* 141 Cal.App.4th 199, 208, 45 Cal.Rptr.3d 692,699 (Ct. App. 2006) ("Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is

- 14 -

for the trier of fact to determine whether the contract actually existed.").[8]

Accordingly, if this Court concludes that the Auction Terms are ambiguous, *i.e.*

"capable of two or more constructions both of which are reasonable" (*see*

authorities cited above), the Order appealed from must be reversed and the

Complaint must be reinstated.

      **E.**    **Relevant Provisions of the Contract.**   Inevitably, in a case such as

this, the parties focus on different provisions of the underlying contract. Each

side's contentions is presented below:

              **1.**     ***The Provisions on Which Truman Capital Relies.***

      (a)     <u>Bidding and Winning</u>.  The central issue on the motion to

dismiss, and on this appeal, is whether Truman Capital had a right to purchase the

Notes in this case.  The answer to that question appears in the following language

set forth in the "Bidding and Winning" section of the Auction Terms that formed a

binding contract between Nationstar and all bidders, including Truman Capital:

> To purchase a particular Note at the Auction, one must
> be acknowledged by the Auctioneer as the Winning

---

     [8]   New York law is no different.  *See, e.g., Maniolos v. U.S.*, 741 F.Supp.2d 555, 567 (S.D.N.Y. 2010) (Ambiguity in a contract presents a question of fact and therefore precludes summary dismissal.); *Serdavic v. Centex Homes, LLC*, 760 F.Supp.2d 322, 328 (S.D.N.Y. 2010) ("On a motion to dismiss, the Court may resolve issues of contract interpretation when the contract is properly before the Court, but must resolve all ambiguities in the contract in Plaintiffs' favor."); *Telerep, LLC, supra*, at page 402; *Agor v. Board of Educ.*, 115 A.D.3d 1047, 1048, 4981 N.Y.S.2d 485, 487 (3rd Dep't 2014).

> Bidder (the bidder to whom the Auctioneer acknowledges the Note as being "SOLD" to), and such Note is not identified as being sold "Subject to Confirmation" (see below).

(Auction Terms, page 2, section 3, para, 3, ("Bidding and Winning"), second sentence; JA 29). The provision thus sets two, and only two, prerequisites in order for a bidder to have the right to purchase the Notes: (i) the Auctioneer – not the Seller (Nationstar) – must declare the bidder to be the "Winning Bidder"; and (ii) the Auctioneer does not identify the sale of the Notes as "Subject to Confirmation."

The District Court acknowledged that the first prong was satisfied: "there is no dispute that [Truman Capital] was the winning bidder for the 538 mortgage loans at issue." (Opinion, at 9; JA 80).

Nationstar does not claim that the Auctioneer ever identified any of those 538 Notes as being "Subject to Confirmation," either when it notified Truman Capital, both orally and in writing, that it was the Winning Bidder, or at any time thereafter.

Those facts, standing alone, are sufficient to justify reversal of the District Court's dismissal of the Complaint and a remand of the case for further plenary

- 16 -

proceedings to determine both liability and damages.[9]  But instead of applying this provision according to its literal meaning, the District Court concluded that although Truman Capital was the "Winning Bidder," there remained for decision the issue of "what rights, if any, such a designation conferred."  (*Id.*).  However, the Court needed to look no further than the first clause of the sentence quoted immediately above to confirm that the right conferred by that designation was the right to purchase the Notes.

This provision of the parties' contract is a model of clarity in stating that the Auctioneer's designation of Truman Capital as the Winning Bidder meant that it had the right "to purchase" the notes as to which it had been so designated — if, as was the case here, the Auctioneer did not specify that the sale was "Subject to Confirmation."

_____

[9]   Indeed, we respectfully submit that unless this Court is inclined to relieve Nationstar of the consequences of the *contra proferentem* rule requiring resolution against it of any ambiguities in the contract it drafted, the Order appealed from should be reversed and the case should be remanded with instructions to enter judgment in Truman Capital's favor as to liability and to conduct further proceedings solely to determine the amount of damages to which it is entitled.  If so inclined, it is within the scope of this Court's appellate power to do so as part of its *de novo* review of the District Court's decision to do so.  *See, e.g., Sorlucco v. New York City Police Dept.,* 971 F.2d 864, 875 (2d Cir. 1992) (District Court decision was reversed and remanded with directions to enter judgment in the Plaintiff's favor on one of her claims.); *Sedco, Inc. v. S.S. Strathewe*, 800 F.2d 27, 33 (2d Cir. 1986) (same).

It is certainly accurate to say that, when all the provisions of the Auction Terms are read in their totality, inconsistencies can be found. But it is surely inaccurate to say that <u>this</u> provision of the Auction Terms does not clearly and conclusively establish Truman Capital's right to purchase the Notes in this case. And, we respectfully submit, it was just as surely impermissible for the District Court to wholly disregard this clear contractual provision in favor of a different contractual provision (relied on by Nationstar and discussed below) which the Court deemed to be clear, at least on its face.

It appears from both the colloquy at oral argument (Transcript at 7:21-8:1; JA 50-51) and the Opinion (Opinion, at 13-15; JA 84-86) that the District Court somehow concluded that the Auctioneer lacked authority to confirm the Winning Bidder's right to purchase the Notes. The District Court acknowledged that the Auctioneer was Nationstar's agent for purposes of conducting the auction (Transcript, 13:20-14:3; JA 56-57), but observed that "[t]hroughout the Auction Terms, a distinction is drawn between Nationstar, the Seller, and Auction.com, the Auctioneer, and when both parties have the authority to act, that fact is made clear." (Opinion, at 15; JA 86). Although that observation is accurate, it is, we respectfully submit, beside the point because <u>one</u> of the provisions in which the distinction between Nationstar and the Auctioneer was indeed "made clear" is the provision quoted above: "To purchase a Particular Note at the Auction, one must

- 18 -

be acknowledged <u>by the Auctioneer</u> as the Winning Bidder (the bidder to whom <u>the Auctioneer</u> acknowledges the Note as being "SOLD" to), and such Note is not identified as being sold "Subject to Confirmation" (see below)" (emphasis added).

But even if this provision were not so clear in expressing that Nationstar had granted its agent the authority to determine which bidders had the right "to purchase" the Notes, the District Court's dismissal of the Complaint would still constitute reversible error, as it is fundamental that questions of agency and scope of agency are not appropriate issues to be decided on a motion to dismiss, but are matters to be determined at trial. *City of Industry v. City of Fillmore*, 198 Cal.App.4th 191, 212, 129 Cal.Rptr.3d 433, 451 (Ct. App. 2011) ("An allegation of agency is an allegation of ultimate fact that must be accepted as true for purposes of ruling on a demurrer."); *Kiseskey v. Carpenters' Trust for Southern California,* 144 Cal.App.3d 222, 230, 192 Cal.Rptr. 492, 496-97 (Ct. App. 1983) ("The general allegation of agency is one of ultimate fact, sufficient against a demurrer [motion to dismiss] . . . We accordingly conclude that plaintiffs' allegations of agency and that the acts of the agents committed within the scope of agency and employment are sufficient . . . ." (internal citations omitted)); *Cano v. Tyrrell*, 256 Cal.App.2d 824, 830, 64 Cal.Rptr. 522, 525-26 (Ct. App. 1967*); see Garton v. Title Insurance & Trust Company*, 106 Cal.App.3d 365, 375-76, 165 Cal.Rptr. 449, 454 (Ct. App. 1980).

It is apparent from the colloquy that occurred during oral argument that the District Court's conclusion that only Nationstar itself had the right to authorize the purchase of the Notes — despite the language quoted above — was based on two factual assumptions that are not part of the record, find no expression in the contractual provision itself, and actually contradict the language of the Auction Terms. Thus, the District Court assumed that: (i) before it was permitted to notify the Winning Bidder that it was in fact the Winning Bidder, the Auctioneer was required to "contact [ ] the seller, who said it's fine" (Transcript at 17:3; JA 60), and (ii) that the Auctioneer had not done so in this case.

Because neither of these assumed "facts" finds any support in the record (Transcript at 17: 6-8; JA 60), the District Court simply supplied them because it believed it was "logical" to do so (*Id.*). But a careful reading of the District Court's comments also makes clear that what it believed to be the logic of its reasoning was actually a tautology. The Court assumed that the auctioneer was required to contact the seller before designating the Winning Bidder because "otherwise you're giving the auctioneer … a power that is rather extraordinary." (*Id.*; JA 60:8-14). Expressed another way, the District Court assumed that the Auctioneer did <u>not</u> have the authority to designate the Winning Bidder because it would be illogical to assume that the Auctioneer <u>did</u> have that power. We respectfully submit that the District Court's "assumptions" and instincts as to what

- 20 -

would be "logical" in an auction context are an impermissible substitute for interpretation of the clear language used in the Auction Terms: the critical language bears repeating. The Auction Terms specifically state: "To purchase a particular Note at the Auction, one must be acknowledged <u>by the Auctioneer</u> as the Winning Bidder (the bidder to whom <u>the Auctioneer</u> acknowledges the Note as being "SOLD" to), and such Note is not identified as being sold "Subject to Confirmation" (see below). (Auction Terms, page 2, section 3, para, 3 ("Bidding and Winning"), second sentence; JA 29) (emphasis added).

<u>Reserve Auction.</u> There should have been no dispute that this was a "Reserve Auction," as the Auction Terms are actually entitled "Reserve Auction Terms and Conditions – Pool Notes" (JA 28), a designation that appears in all capital letters and boldface type at the top of each page of the Auction Terms. The District Court nonetheless based its interpretation of the Auction Terms on its unilateral characterization of the auction as being "conditional" in nature, observing without explanation that "the existence of a reserve was only one feature of the agreement, and the Auction Terms actually created a selling structure more akin to a conditional auction." (Opinion, at 11; JA 82).

The District Court based its view in that regard on language contained in a section of the Auction Terms entitled "Subject to Confirmation." (Auction Terms, page 3, section 3, para. 6 ("Subject to Confirmation"); JA 30). The language on

- 21 -

which reliance is placed states that the "Winning Bidder's purchase is subject to, and contingent upon, the Seller approving the purchase, which shall be given or denied at their sole and absolute discretion within five (5) business days following the close of the Auction and execution of the Loan Sale Agreement by the Winning Bidder." *Id.,* second sentence. But the District Court's reliance on this provision describing the effect of a "Subject to Confirmation" designation by the Auctioneer was error because the undisputed fact is that the Auctioneer had declared Truman Capital to be the Winning Bidder <u>without stating that Note purchase was "Subject to Confirmation."</u> Therefore, the entirety of this provision is irrelevant to a consideration of whether Truman Capital had a right to purchase the Notes, and the District Court's reliance on language contained in this provision was clearly incorrect.

Nationstar's position, adopted by the District Court, is that this was a "conditional," not a "reserve," auction because <u>all </u>sales were "Subject to Confirmation" by Nationstar. But if that interpretation were correct, there would be no need for many of the provisions in the Auction Terms, and it would certainly make no sense to include a provision stating that "to purchase a particular Note," it is the <u>Auctioneer's</u> duty to identify the Winning Bidder and <u>whether</u> the Note is being sold "Subject to Confirmation." Moreover, if this were a "conditional" auction, and the District Court believed that the "Subject to

Confirmation" provision was always applicable, then the District Court should also have found that one of the "conditions" of Nationstar's alleged right to the 5-day review period was that the Auctioneer had indeed declared the Note to be "Subject to Confirmation," as provided in the "Bidding and Winning" section quoted above. As noted above, that never occurred.

The District Court seems to have based its implicit assumption that all auctions are *ipso facto* "conditional" in nature on the following language quoted from *In re El Camino Press,* 31 B.R. 340, (Bankr. C.D. Cal. 1983): "[W]here a right is reserved in the seller to reject any and all bids received, the right may be exercised by the owner even after the auctioneer has accepted a bid . . . ." *Id.* at 344 (internal quotation marks omitted). (Opinion, at 12; JA 83). Putting aside the overbreadth of the Court's reading of this language, and even ignoring the significant distinctions between the facts in this case and those in *In re El Camino Press*, [10] the quoted language is certainly an accurate statement of the law, but is entirely beside the point. The precise questions for decision on the dismissal motion below and on this appeal are <u>whether</u> the Auction Terms contained a

---

[10] The bankruptcy trustee was authorized to sell physical assets of the Debtor at auction on the condition that if the property was sold at a price less than the amount of the liens to which it was subject to, the sale could be consummated only with the consent of the secured parties. *In re El Camino Press,* 31 B.R. at 344.

- 23 -

reservation of Nationstar's right to reject bids after the Auctioneer has accepted them and, if so, <u>whether</u> that reservation of rights was exercised. The clear answer to both questions is that: (a) such a reservation of rights did in fact exist, but in order to exercise that right, the Auctioneer was specifically authorized and required to accompany its designation of the "Winning Bidder" with a notification that the sale was "Subject to Confirmation", and (b) the Auctioneer did not do so in this case. If Nationstar claims that the Auctioneer should have, but did not, make a "Subject to Confirmation" designation, that dispute must be resolved between Nationstar and its agent, the Auctioneer, Auction.com. Any such dispute should not, however, deprive Truman Capital of the benefit its bargain to purchase the 538 Notes as to which it was declared the Winning Bidder for an aggregate purchase price of approximately $150 million.

(c) <u>Other Provisions</u>. Numerous provisions in the Auction Terms reinforce the conclusion that a Winning Bidder had the right "to purchase" the Notes, as long as the Auctioneer's designation of that status was not accompanied by the "Subject to Confirmation" reservation. For example:

- The section of the Auction Terms entitled "Reserve Auction states that "[t]he Seller may withdraw a Note at any time <u>prior to the announcement of the completion of the sale by the Auctioneer</u>." (Auction Terms, page 2, section 3 ("Reserve Auction"), para 1, penultimate sentence; JA 29)

(emphasis added).  Once again, the Auction Terms make clear that it is within the province of the <u>Auctioneer</u> to announce the completion of the sale, and that Nationstar did not reserve that right for itself.  Equally significant is the fact that it would be surplusage if Nationstar's obligation to sell the Note was conditioned on its execution of a Loan Sale Agreement — which is the linchpin of Nationstar's position and the District Court's decision below.

- The same section of the Auction Terms entitled "Bidding and Winning" confirmed that the Winning Bidder had an absolute obligation to purchase the Notes, subject only to the formality of executing a written Loan Sale Agreement.  It provided as follows: "[i]f you are the Winning Bidder, you will be contacted by phone by an Auctioneer representative . . .  [and] sent . . . the Loan Sale Agreement and certain other documents for electronic signature, unless otherwise  directed by Seller."  (Auction Terms, page 2, section 3, para, 3, third and fourth sentences; JA 29).[11]

---

[11]   The fact that Nationstar refused to countersign the Loan Sale Agreement that the Auctioneer sent to Truman Capital, and which Truman Capital timely executed and returned, did not eradicate Nationstar's legal obligation to do so.  Nor did such failure prevent the formation of a contract, as the District Court specifically found that all the elements required by California law to create an enforceable contract were contained in the correspondence between Auction.com and Truman Capital (Opinion, at 14; JA 85).  Despite this finding, the District Court also made the wholly inconsistent finding that "it is inaccurate to assert that

- The Auction Terms specifically provide that the Winning Bidder would be "in default" if it could not be contacted by the Auctioneer, or had not executed the purchase documentation, within 2 hours of the Auctioneer's acknowledgment of the winning bid. (Auction Terms, page 2, section 3, para, 4, first sentence; JA 29). Manifestly, the notion of a "default" by the Winning Bidder implies the existence of an obligation, and in this case that obligation is clearly the obligation to purchase the Notes. Nationstar's position is thus the facially implausible one that the Winning Bidder,

_____

the written and signed loan sale agreement functioned as a mere formalization of the contract terms contained in the email confirmations." (Opinion, at 15; JA 86). But the path to the latter conclusion was tautological: The District Court's determination that an enforceable sale contract could only be created by execution of the Loan Sale Agreement by Nationstar was not the product of contract interpretation, but solely an *ipso facto* declaration that that was so. ("By ensuring that it would not be bound until it signed and delivered a loan sale agreement, Nationstar used the process of reducing the terms to a signed writing as a mechanism to retain final approval of the deal." (*Id.*)). In effect, therefore, the District Court interpreted the contract as requiring that a signed agreement was necessary to create a binding agreement because the District Court <u>concluded</u> that a signed agreement was necessary to create a binding agreement. And as the District Court's comments during oral argument confirmed, it reached that conclusion not after attempting to harmonize the apparently conflicting provisions of the Auction Terms, but merely because it seemed to be the "logical" assumption to make. (Transcript, 17:8-9; JA 60).

Truman Capital, had an obligation to <u>purchase</u> the Notes but Nationstar had no concomitant obligation to <u>sell</u> them.[12]

- The Auction Terms state that a failure to adhere to this 2-hour deadline entitled Nationstar to declare "the Winning Bidder's bid . . . <u>null and void</u> and the Auctioneer and Seller shall have absolutely <u>no further liability or obligation to that Bidder</u>."  (Auction Terms, page 2, section 3, para. 4, second sentence; JA 29) (emphasis added).  The statement that something can be declared "null and void" clearly implies that it would be binding and enforceable in the absence of such declaration.  And, even more tellingly, the notion that the Auctioneer and Seller shall have no <u>further</u> liability or obligation to the Winning Bidder clearly implies that in the <u>absence</u> of that declaration of nullity and voidness, Nationstar most assuredly would have such liability or obligation to the Winning Bidder.  And the only conceivable "liability or obligation" that could arise in these circumstances is the obligation to sell the Notes as to which Truman Capital had been declared the Winning Bidder.  Again, Nationstar urges the Court to interpret the Auction Terms it prepared in such a way as to create rights in its favor

---

[12]   No assertion has been, or could be, made that Truman Capital was "in default," and the Complaint specifically recites that Truman Capital fully and faithfully performed its own obligations under the contract (Cmplt., ¶ 54; JA 25).

without concomitant obligations, despite clear language to the contrary.
And beyond that, if Nationstar truly had no obligation to sell the Notes to a
Winning Bidder whose bid had not been made "Subject to Confirmation,"
all this language regarding "default," "null and void" and "no further
liability or obligation" would serve no purpose and would therefore be the
very type of surplusage that courts are required to eschew in performing the
task of contract interpretation.

- This is further reinforced by the remedies that the Auction Terms give to a
  Seller in the event that a Winning Bidder refused to consummate the sale. In
  all capital letters and boldface type, the Auction Terms provide: **"IN
  ADDITION, SUCH WINNING BIDDER SHALL BE SUBJECT TO
  LIQUIDATED DAMAGES EQUAL TO 10% OF THE PURCHASE
  PRICE AND AUCTIONEER AND SELLER RESERVE THE RIGHT
  TO SEEK ANY AND ALL REMEDIES, INCLUDING SPECIFIC
  PERFORMANCE."** (Auction Terms, pages 2-3, section 3, para, 4, third
  sentence; JA 29-30) (emphasis in original).

This provision, like the default and disclaimer provisions discussed above, is
intended to apply before a formal written contract of sale has been signed; in fact,
these provisions are all triggered solely by the Auctioneer's declaration of a

Winning Bidder who either cannot be reached within two hours or fails to execute a written contract of sale.

In addition to all the principles of contract interpretation enumerated above, it is also well-established that contracts should be interpreted so that, if possible, they are legally enforceable. *Walsh v. Schlecht*, 429 U.S. 401, 408, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977); *N.L.R.B. v. Local 32B-32J Service Employees Intern. Union*, 353 F.3d 197, 202 (2d Cir. 2003); *Venizelos S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir. 1970); *Natural Resources Defense Council, Inc. v. County of Los Angeles,* 725 F.3d 1194, 1207 (9th Cir. 2013); *Bleecher v. Conte*, 29 Cal.3d 345, 350, 213 Cal.Rptr. 852, 855, P.2d 1154, 1157 (1981). But the remedies available against a "defaulting" Winning Bidder who refused to purchase the Notes could only be deemed enforceable if Nationstar had a concomitant obligation to sell those Notes. California law is clear on this point.

Pursuant to Cal. Civ. Code § 1589, "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." *Id.* The statute applies not only to a party to the original contract, *Scripps Health v. Blue Cross & Blue Shield of Kansas, Inc.*, 2011 WL 292142 (S.D. Cal. 2011), *Recorded Picture Co. v. Nelson Entertainment, Inc.*, 53 Cal.App.4th 350, 362 n. 6, 61 Cal.Rptr.2d 742 (Ct. App. 1997)), but even to a non-signatory to a contract that

took the benefits provided by it.  The *Scripps Health* Court held that, in interpreting Cal. Civ. Code § 1589, if a non-party to a contract knowingly exploits the contract, it is bound by the contractual terms.  *Scripps Health, supra*, at \*2.  If the rule as enunciated in Cal. Civ. Code § 1589 applies even to non-parties to a contemplated transaction, it most assuredly applies to Nationstar in this case.

Nationstar "knowingly exploited" the Auction Terms by ensuring that, at the conclusion of the auction bidding process, the Winning Bidder could not with impunity simply walk away from the transaction.  Yet the District Court's decision permitted Nationstar to take precisely that irresponsible "heads I win, tails you lose" approach.  Cal. Civ. Code § 1589 and the decisions applying it are to the contrary.

Finally in this connection, this penalty provision also states that in the event of such "default" by the Winning Bidder, "Auctioneer and Seller reserve the right to immediately put the Note back up for sale."  (Auction Terms, page 3, section 3, para, 4, fourth sentence; JA 30).  Once again, this provision underscores the fact that Truman Capital must be deemed to have had the right to purchase the Notes after being declared the Winning Bidder because if no such right had existed, Nationstar would have been free to do as it wished with the Notes, and there be would no need for it to state that it had the right to put the Notes back up for sale.

Once again, the District Court's interpretation would make this provision impermissible surplusage.

### 2.    *The Provisions on Which Nationstar Relies.*

(a)    <u>General Auction Information.</u>  This is the provision of the Auction Terms on which Nationstar's entire argument rests, and which he District Court found to be dispositive:

> No obligation to sell shall be binding on Seller unless and until a written contract of sale or loan sale agreement is signed and delivered by Seller.  Seller reserves the right to rescind any oral acceptance of a winning bid prior to the execution and delivery of an executed contract of sale or loan sale agreement for any reason.

 (Auction Terms, page 5, section 6 "General Auction Information," para. 3, last two sentences; JA 32).

After reviewing many of the provisions in the Auction Terms that Truman Capital cited as being inconsistent and irreconcilable with the sole provision on which Nationstar relies, the Court ruled as follows:

> Plaintiff's invocation of a litany of Auction Terms that tangentially relate to the instant issue cannot obscure what is plain: [Truman Capital] participated in a conditional auction in which Nationstar retained the right to renege on the deal unless and until it delivered particular signed documents to plaintiffs.  That delivery [of documents by Nationstar] never came, and thus the deal was never done. Therefore, we reject plaintiffs' assertion that the contract as a whole suggests that Nationstar was obligated to sell the mortgage loans to [Truman Capital] when it was named the winning bidder.

- 31 -

(Opinion at 12-13; JA 83-84).

The District Court's decision to place sole reliance on this provision necessarily required it to either ignore other provisions dealing with the issue of acquiring a legal right to purchase Notes (*e.g.,* the language in the *"Bidding and Winning"* section quoted multiple times above), or after considering them, to deem them to be irrelevant[13] and, therefore, mere surplusage (*see* Point E (1) *supra*).  In fact, in order to rely on this provision, the District Court necessarily deemed the second sentence of the provision itself to be surplusage.  If the first sentence ("No obligation to sell shall be binding on Seller unless and until a written contract of sale or loan sale agreement is signed and delivered by Seller") is deemed to express the intention of the contract, then the second sentence ("Seller reserves the right to rescind any oral acceptance of a winning bid prior to the execution and delivery of an executed contract of sale or loan sale agreement for any reason") is wholly unnecessary.

Even if the Court's interpretation of the general provision set forth in the section entitled "General Auction Information" were accepted, however, the

_____

[13]   To describe the "Bidding and Winning" provision discussed above as only "tangentially relate[d] to the instant issue [Truman Capital's right to purchase the Notes]" (Opinion at 12; JA 83) would be so clearly incorrect that it must be assumed that the District Court had a different reason for ignoring that provision.

applicability of that provision should nonetheless yield to the more specific language set forth in the "Bidding and Winning" section of the Auction Terms, and quoted several times above. *See e.g. Prouty v. Gores Technology Group,* 121 Cal.App.4[th] 1225, 1235, 18 Cal.Rptr.3d 178, 186 (Ct. App. 2004) ("under well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision"); *see also Maples v. SolarWinds Inc.,* 2014 WL 2860848, *6 (N.D. Cal. June 23, 2014) (noting "the fundamental rule of contract interpretation that specific terms of the contract cannot be ignored" and finding "[a]t the very least, these conflicting … provisions created an ambiguity which is construed against [the drafter]").

       (b)     Another sentence on which Nationstar places significant reliance states that: "Winning Bidders . . . will be required to execute loan sale documentation in a form and with terms and provisions required by Seller (the "Loan Sale Agreement") . . . ." (Auction Terms, page 1, para. 1, last sentence; JA 28).[14] Fairly read, however, this provision does not speak to the issue of when a

_____

    [14] As noted above, this intention also found expression throughout the "Bidding and Winning" section of the Auction Terms: a Winning Bidder who "defaulted" in its obligation to execute a Loan Sale Agreement or otherwise to failed to consummate the purchase was subject to liability for breach of contract and severe monetary penalties and the remedy of specific performance. (Auction Terms, section 3, para. 4; JA 29-30). And, as also noted above, no allegation has

- 33 -

binding and enforceable obligation arose for Nationstar to sell the Notes. Rather, it expresses the intention to enter into a formal written contract to memorialize the actual sale of the Notes. But the fact that a formal contract was contemplated does not mean that no contract can arise in its absence, especially where, as here, all the essential terms were clear, and it was Nationstar that refused to sign that contract.

Under applicable California law, agreements that contain the essential terms of a contract can create binding legal obligations, even if they are only oral in nature, and even if the intent expressed by the parties is to execute a future written contract. *Khajavi v. Feather River Anesthesia Medical Group,* 84 Cal.App.4th 32, 61, 100 Cal.Rptr.2d 627, 648 (Ct. App. 2000); *Louis Lesser Enterprises, Limited v. Roeder*, 209 Cal.App.2d 401, 404-05, 25 Cal.Rptr. 917, 919 (Ct. App. 1962) (same rule applied to preliminary written negotiations; claim dismissed, but only because essential terms were missing); *The Aspect Group v. Movietickets.com, Inc*., 2006 WL 5894608, *7 (C.D. Cal. 2006*); see also* Restatement (Second) of Contracts § 27 (1981).[15]

———————————

ever been made that Truman Capital defaulted in its obligations after it was notified by Nationstar's agent that it was the Winning Bidder without any indication that the sale was "subject to confirmation," and the Complaint affirmatively alleges that Truman Capital fully and faithfully performed its own obligations under the contract. (Cmplt., ¶ 54; JA 25).

[15]   California law is therefore fully consistent with the law in this Circuit. *See, e.g., Adjustrite Systems Inc. v. GAB Business Services, Inc.,* 145 F.3d 543, 548

* * * * * * * * * * *

The contract at issue in this case and on this appeal is the agreement created by the Auction Terms for the purpose of determining which of the bidders would have the right to purchase the Notes that had been put up for auction. Nationstar's exclusive agent, the Auctioneer, was specifically authorized to, and did in fact, acknowledge that Truman Capital was the Winning Bidder with respect to, and had the "right to purchase" 538 Notes that had been "SOLD" to it at auction. Nationstar's refusal to consummate the sale of those Notes is a breach of contract.

**Point II: Nationstar Should Be Estopped From Denying That**
**<u>It Promised To Sell The Notes To Truman Capital</u>**

Even if the inconsistencies in the various provisions of the Auction Terms cannot be harmonized, and even if Nationstar is relieved of the consequences of having the contract it drafted construed against it, Truman Capital is still entitled to relief under the California version of promissory estoppel. The elements of a promissory estoppel claim under California law are: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made;

---

(2d Cir. 1998); *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 71-72 (2d Cir. 1989); *FCOF UB Securities LLC v. MorEquity, Inc.,* 663 F. Supp. 2d 224, 227-28 (S.D.N.Y. 2009); *Teachers Ins. and Annuity Ass'n of America v. Tribune Co.,* 670 F. Supp. 491, 498 (S.D.N.Y. 1987). Pursuant to these authorities, a so-called "Type I preliminary agreement" was created in this case, and is fully enforceable. *Adjustre Systems Inc*., 45 F.3d at 549, citing *Winston v. Mediafare Entertainment Corp*., F.2d 78,80 (2d Cir. 1986).

- 35 -

(3) the reliance must be reasonable and foreseeable; and (4) the party asserting estoppel must be damaged by its reliance. *U.S. Ecology, Inc. v. State*, 129 Cal.App.4th 887, 901, 28 Cal.Rptr.3d 894, 905 (Ct. App. 2005).

The *first* element of a promissory estoppel claim is satisfied by the allegation that Auction.com, acting as Nationstar's agent, listed the Notes for auction and invited Truman Capital and the relevant industry participants at large to submit bids to purchase those Notes. There would be absolutely no purpose in doing so in the absence of a reasonable expectation that the Winning Bidder would be able to purchase those Notes. The reasonableness of this belief by the bidders is reinforced by the language quoted numerous times above from the section of the Auction Terms entitled "Bidding and Winning," which assured Winning Bidders that they would indeed be entitled "to purchase the . . . Notes." (Auction Terms, page 2, section 3, para. 3 ("Bidding and Winning"); JA 29)

The *second* element is satisfied by the allegations that Truman Capital registered for the auction, conducted due diligence in anticipation of the sale of the Notes, submitted bids over the course of several weeks and, when it received written confirmation that it was the Winning Bidder, signed and submitted the Loan Sale Agreement and otherwise complied with all the protocols specified in the Auction Terms, including requesting that Nationstar complete the sale. (Cmplt., ¶¶ 19, 20, 25, 28, 34, 35, 40, and 48; JA 20-23, 25).

The *third* element, reasonable and foreseeable reliance, is also satisfied, essentially for the same reason as the first.  It would be utterly unreasonable for a bidder <u>not</u> to believe that it would be permitted to purchase the Notes if it actually won the auction by being designated the "Winning Bidder."

The language in the "General Auction Information" section of the Auction Terms stating that no obligation to sell shall be binding on the Seller unless and until the Seller itself signs and delivers a written contract of sale does not, as Nationstar argued below, render any reliance by Truman Capital to be *per se* unreasonable for at least two reasons.  First, a determination as to "reasonableness" is quintessentially a fact question to be reserved for trial.  *Diede Const., Inc. v. Monterey Mechanical Co*., 125 Cal.App.4th 380, 392, 22 Cal.Rptr.3d 763, 771 (Ct. App. 2004); *Greene v. Wilson*, 208 Cal.App.2d 852, 857, 25 Cal.Rptr. 630, 634 (Ct. App. 1962); *Calhoun v. Huntingon Park First Sav. and Loan Ass'n*, 186 Cal.App.2d 451, 461, 9 Cal.Rptr. 479 (Ct. App. 1960); *Oracle Corp. v. Falotti,* 187 F. Supp. 2d 1184, 1206 (N.D. Cal. 2001).

The second reason to reject the argument  has been discussed at length above, *viz.*, the so-called "reservations of rights" contained in the Auction Terms were not triggered in this case because: (a) Truman Capital's bids were at or above the Reserve Prices specified by Nationstar; (b) Truman Capital was notified orally and in writing that it was the Winning Bidder, without any indication that its status

in that regard was "subject to confirmation"; and (c) the Auction Terms actually confirmed that a Winning Bidder was absolutely required to purchase the Notes under penalty of liquidated damages and even the possibility of specific performance.  It would hardly be "unreasonable" for a bidder to believe that winning the bid would not only give it the <u>obligation</u> to purchase the Notes, but also the <u>right</u> to do so.  Nationstar's argument to the contrary falls of its own weight.

The availability of relief under the alternate theory of promissory estoppel is quite significant because under California law, the measure of damages under a promissory estoppel theory is identical to the measure of damages available for a breach of contract.  *Cooper v. State Farm Mut. Auto. Ins. Co.*, 177 Cal.App.4th 876, 900, 99 Cal.Rptr.3d 870, 888-89 (Ct. App. 2009).  The *Cooper* Court stated that "while promissory estoppel is distinct from contract, [t]here appears to be no rational basis for distinguishing the two situations in terms of the *damages* that may be recovered."  *Id*. at 889 (internal quotation omitted) (emphasis in the original).  One measure of contractual damages is the "benefit of the bargain."  The court in *Sanbrook v. Office Depot, Inc*., 2009 WL 400198 (N.D. Cal. February 18, 2009) stated that "[i]n breach of contract actions, the appropriate measure of damages is the 'benefit of the bargain,' that is, compensation sufficient to 'place [the injured party] in the same position he would have been in had the promisor

- 38 -

performed.'" *Id*. at *3 (quoting *Coughlin v. Blair*, 41 Cal.2d 587, 603, 262 P.2d 305 (1953)); *Jack Rowe Associates, Inc. v. Sanyo Fisher (USA) Corp*., 936 F.2d 578, *8 (9th Cir. 1991); *Plaza Home Mortgage, Inc. v. North American Title Insurance Company, Inc.,* 2013 WL 1694916, *6 (Ct. App. April 19, 2013) (overturned on alternate grounds); *Winegar v. Gray,* 204 Cal.App.2d 303, 313, 22 Cal.Rptr.301, 308 (Ct. App. 2003); *In re American Suzuki Motor Corp*., 494 B.R. 466, 489, 58 Bankr. Ct. Dec. 9 (Bankr. C.D. Cal. 2013).

Because promissory estoppel damages are the same as those under a breach of contract theory of liability, *i.e.,* the benefit of the bargain, Truman Capital has properly pleaded the *fourth* element of promissory estoppel: that it was damaged when it conducted due diligence in anticipation of the auction and that it is entitled to the "benefit of the bargain," which, in this case, would be the difference between the price bid for the Notes and their fair market value. (Cmplt., ¶¶ 2, 55 and 58; JA 17, 26).

Therefore, even in the absence of a binding contract, Truman Capital is nonetheless entitled to relief under the California version of promissory estoppel.

## CONCLUSION

The Order appealed from should be reversed and the action should be remanded to the District Court with instructions to enter judgment in favor of Plaintiffs-Appellants and to conduct such further proceedings as may be necessary

to determine the amount of damages to which they are entitled, as measured by the difference between the fair market value of the Notes and the aggregate amount of Truman Capital's bids for those Notes as to which it was declared the Winning Bidder. At a minimum, the Order appealed from should be reversed and the action should be remanded to the District Court for further plenary proceedings.

Dated:  New York, New York
         November 12, 2014

**PILIERO & ASSOCIATES PLLC**

By:  ___/s/ Robert D. Piliero___

Robert D. Piliero (piliero@ pilierolaw.com)
444 Madison Avenue, Fourth Floor
New York, New York 10022
Tel: 646.854.1273
      914.484.2534

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type-volume

limitations set forth in F.R.A.P. 32(a), and that there are 9,900 words in this brief.

**PILIERO & ASSOCIATES PLLC**


By: __/s/ Robert D. Piliero__

Robert D. Piliero (piliero@ pilierolaw.com)
444 Madison Avenue, Fourth Floor
New York, New York 10022
Tel: 646.854.1273
    914.484.2534

*Attorneys for Plaintiffs-Appellants*